## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

     v.

LANCE GREEN,
             Defendant

CRIMINAL NO. 3:19-CR-233

(MARIANI, J.)
(MEHALCHICK, M.J.)

## MEMORANDUM

This matter comes before the Court on Defendant's Motion for Pretrial Release Due to COVID-19. (Doc. 39). Defendant, Lance Green, moves this Court to reconsider its earlier order of detention, and to order his temporary release in order to facilitate the preparation of a defense and due to a compelling reason pursuant to 18 U.S.C. § 3142(i). The Government opposes this motion. (Doc. 41).

I.    **BACKGROUND AND PROCEDURAL HISTORY**

On July 19, 2019, Green was charged by Criminal Complaint with two counts under 18 U.S.C. § 922 – prohibited person in possession of a firearm in violation of § 922(g) and possession of a firearm with an obliterated serial number in violation of § 922(k). (Doc. 1). Green appeared before this Court for his initial appearance on those charges on July 22, 2019, at which time a detention hearing was scheduled for July 29, 2019. (Doc. 9). That hearing was subsequently continued until July 31, 2019. (Doc. 11). In the interim, on July 30, 2019, Green was charged by Indictment with the same two counts that were alleged against him in the Criminal Complaint. (Doc. 12). At his arraignment on July 31, 2019, Green entered a plea "not guilty" to the charges in the Indictment. (Doc. 17). The Government moved for continued detention of Green; his counsel sought release. The Court conducted a detention

hearing and determined that Green should continue to be detained, finding that no condition or combination of conditions of release would reasonably assure the safety of any other person and the community or reasonably assure Green's appearance as required. (Doc. 18). The Court held that detention was warranted based on consideration of the factors listed by the Bail Reform Act – the nature and circumstances of the offenses charged; the weight of the evidence against the defendant; the history and characteristics of the defendant, including Green's prior criminal history, his lack of significant ties to this District, his use of aliases or false documents, and his prior violations of probation, parole, or supervised release; and the danger to the community should he be released. (Doc. 18).

Green is currently housed at Lackawanna County Prison. On April 3, 2020, Green, through counsel, filed a motion for pretrial release. (Doc. 39). In this motion, brought pursuant to 18 U.S.C. § 3142(i), Green seeks an order of temporary release to facilitate the preparation of a defense and due to a compelling reason – that being the risk associated with being incarcerated during the current COVID-19 pandemic. In his reply brief, Green proffers that he is over 60 years of age and suffers from an unspecified heart ailment and diabetes. (Doc. 42). Green makes no other argument or proffer that his health conditions place him at higher risk for contracting the COVID-19 virus, and only argues that the virus poses a risk to him and to other inmates, and that his ability to prepare his defense and meet with counsel is impeded by the pandemic.

Counsel for Green filed a Notice with the Court on April 7, 2020 indicating that the parties were unable to come to an agreement regarding Green's release from detention, and that Green believes a hearing is necessary to present evidence of his vulnerability to COVID-19 at Lackawanna County Prison, that he is not a danger to the community should he be

released, and that he will abide by all conditions of release and COVID-19 guidelines if he is released. (Doc. 42). There is no authority to suggest that a hearing is required or necessary under § 3142(i), and the Court is able to resolve the motion without a hearing or oral argument. *See United States v. Loveings*, CR 20-51, 2020 WL 1501859, at *3 (W.D. Pa. Mar. 30, 2020)

## II.   DISCUSSION

### A.   THE COVID-19 PANDEMIC

On March 11, 2020, the World Health Organization declared the novel coronavirus known as COVID-19 a pandemic.[1] The COVID-19 outbreak caused the President of the United States to declare a national emergency and the Governor of the Commonwealth of Pennsylvania to declare a state of emergency.[2] As of the date of this writing, there are 3,090,445 confirmed cases worldwide and 217,769 deaths; in the United States, there are 1,003,974 confirmed cases and 52,428 deaths.[3] Mindful of the incredible magnitude of this

---

[1] *See* Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020).

[2] *See* President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), *available at* https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Tom Wolf's Proclamation of Disaster Emergency (March 6, 2020), *available at* https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf.

[3] *See* Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://who.sprinklr.com/ (last visited April 30, 2020).

situation, and the extreme health risks associated with COVID-19, the Court will address the motion for pretrial release.

     B.    CONDITIONS AT LACKAWANNA COUNTY PRISON

Attached to the Government's brief in opposition to Green's motion for pretrial release are the preventative actions taken by Lackawanna County Prison in response to the COVID-19 pandemic. (Doc. 41-2; Doc. 41-3). Specifically, the prison implemented an action plan designed to mitigate the potential for spread of COVID-19 inside its facility, and for the protection of inmates and staff, including suspending contact visits, regular visitation, and visitation from volunteers, including religious leaders; implementing aggressive sanitation programs; suspending all programs that utilize "outside" employees; limiting individuals past reception to prison and medical staff; limiting attorney visits with inmates to meetings through the glass of a lawyer visitation room; cancelling all conferences and out-of-county trainings; planning for weekly contact with officials from the Pennsylvania Department of Corrections; and posting educational flyers in the blocks and in the reception area.

As of April 30, 2020, only one correctional officer at the Lackawanna County Prison tested positive for the virus, and that officer has recovered. The Government submits that, according to the U.S. Marshals Service, the officer who tested positive did not have any close contact with Marshal Service Personnel, and that it is unlikely, though possible, that the officer who tested positive had close contact with federal inmates at the prison. That officer is recovered from the virus, and no other cases have been reported at the prison. The prison is on lockdown. Inmates are permitted out of their cells for showers, phone calls, attorney visits (through glass windows), and video teleconferencing for court proceedings. No other officers and no inmates at Lackawanna County Prison have tested positive for COVID-19.

In addition to the above measures and precautions, effective March 20, 2020, the Warden of Lackawanna County prison began requiring that all employees and other individuals (including counsel for inmates) be screened for fevers, and if necessary, other symptoms, upon entering the prison. (Doc. 41-3). The prison remains on lockdown.

C.    TEMPORARY RELEASE PURSUANT TO 18 U.S.C. § 3142(I)

Green moves for temporary release pursuant to 18 U.S.C. § 3142(i) of the Bail Reform Act. That section provides in relevant part as follows:

> The judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be *necessary* for preparation of the person's defense or *for another compelling reason.*

18 U.S.C. § 3142(i) (emphasis added).

The defendant bears the burden of establishing circumstances warranting temporary release under § 3142(i). *See United States v. Buswell*, No. 11-CR-198-01, 2013 WL 210899, at *5 (W.D. La. Jan. 18, 2013) (collecting cases). The Court must carefully and impartially apply the proper legal standards that govern an individual's particular request for relief. *United States v. Roeder*, 20-1682, 2020 WL 1545872, at *3 (3d Cir. Apr. 1, 2020).

Until recent weeks, most motions brought pursuant to § 3142(i) were analyzed under the "necessary for preparation of the person's defense." Not much authority existed as to when temporary release is justified under § 3142(i) based on "another compelling reason." Typically, relief was granted under § 3142(i) only "sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020); *see also United States v. Scarpa,* 815 F. Supp. 88 (E.D.N.Y. 1993) (permitted the defendant to be released

under the 24-hour guard of the United States Marshal Service at his own expense because the defendant had sustained a gunshot wound that destroyed his left eye and surrounding area of his face and skull, he would "shortly die" from terminal AIDS, and correctional authorities could no longer manage his medical conditions.); *United States v. Cordero Caraballo*, 185 F. Supp. 2d 143, 144-47 (D.P.R. 2002) (district court ordered the release of a defendant who had sustained multiple gunshot wounds, was partially paralyzed, could not walk, had lost some arm function, had a wound the size of a fist, and required 4-5 contracted security guards on a daily basis to supervise him; the Bureau of Prisons would not take custody of him because it could not provide the medical care that he required.) Most recently, in *United States v. Garcha*, the Court granted defendant's motion for pretrial release pursuant to § 3142(i) where the defendant was HIV-positive, had a brain tumor, and suffered a pulmonary embolism in 2017, and thus was not only particularly susceptible to contracting the COVID-19 virus, ***but was also*** unable to obtain the necessary MRI and treatment for his brain tumor while in prison.) 2020 WL 1593942, at *2 (N.D. Cal. Apr. 1, 2020) (emphasis added).

Since the onset of the COVID-19 pandemic, and the filing of motions seeking pretrial release, release pending sentencing, compassionate release, and delays in report dates, courts across the country have begun to consider whether the pandemic constitutes a "compelling reason" for temporary release. Consistent in these decisions are findings that the risk of exposure, actual exposure, or contracting the virus, is just one factor to be considered and weighed against the other factors under the Bail Reform Act, including previous findings of danger to the community and risk of flight. Further, the existence of a widespread health risk

or mere speculation about potential exposure to the virus does not constitute a "compelling reason" for temporary release under § 3142(i).[4]

Exposure to COVID-19 is just one factor to be weighed against the original factors considered by the court in ordering detention. Further, the potential exposure exists anywhere in the community, not just in jail, and where necessary steps and precautions to help stop the spread of the virus are being taken by the county jail, along with the court and other authorities, and where there is no indication that a defendants' medical needs are not being met, speculation concerning possible future conditions does not constitute a "compelling reason" for temporary release, especially where the court previously found defendant's release would pose a danger to the community. *See United States v. Fiumara*, CR 15-94, 2020 WL 1540486, at *2 (W.D. Pa. Mar. 30, 2020) (defendant not entitled to release pending final supervised release revocation hearing where she did not articulate any unique susceptibility to the Covid-19 virus and she did not convince the court that her release would not pose a danger to the community); *United States v. Jones*, 2:19-CR-00249-DWA, 2020 WL 1511221, at *3 (W.D. Pa. Mar. 29, 2020) (holding that while Defendant indicates that he suffers from

---

[4] In considering an application for compassionate release, the Court of Appeals for the Third Circuit recently noted "… the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 20-1033, 2020 WL 1647922, at *2 (3d Cir. Apr. 2, 2020). In considering a motion to continue a self-surrender date in light of the COVID-19 pandemic, the court noted that "the existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence," and stating that it is "imperative" that the courts "continue to carefully and impartially apply the proper legal standards that govern each individual's particular request for relief. *Roeder*, 20-1682, 2020 WL 1545872, at *3.

hypertension, sleep apnea and asthma, and it is true that individuals with respiratory issues are at higher risk for COVID-19, his present health conditions are not sufficient to establish a compelling reason for release given the danger to the community if he is released and the efforts being undertaken at the [jail] to combat the spread of the virus) (citing *United States v. Davis*, No. 19-1604, Doc. No. 50 (3d Cir. March 20, 2020); *United States v. Willie Harris*, No. 18-152, Doc. No. 986, Mem. Order (W.D. Pa. March 20, 2020)).

The mere presence of the virus, even in the detention setting, does not automatically translate to the release of a person accused. *United States v. Veras*, 3:19-CR-010, 2020 WL 1675975, at *5 (M.D. Pa. Apr. 6, 2020); *United States v. Williams*, 2020 WL 1643662, at *2 (D. Md. Apr. 2, 2020) (denying defendant's motion even where at least five inmates have tested positive for COVID-19 and defendant suffers from allergies and asthma); *United States v. William Bilbrough, IV*, TDC 20-33 (D. Md. Mar. 20, 2020) (denying the defendant's motion even though the defendant suffered from diabetes); *United States v. Julius Williams*, PWG 13-544 (D. Md. Mar. 24, 2020) (denying a 67-year old defendant's motion); *United States v. Anthony Penaloza*, TDC-19-238 (D. Md. Mar. 31, 2020) (denying the defendant's motion even though the defendant suffered from a heart murmur); *United States v. Teon Jefferson*, CCB-19-487 (D. Md. Mar. 23, 2020) (denying the defendant's motion even though the defendant was asthmatic).

Even where a defendant tests positive for COVID-19, that new circumstance is just one factor to consider in weighing a request for temporary release under § 3142(i). *See United States v. Cook*, 3:16-CR-00312, 2020 WL 1939612, at *4 (M.D. Pa. Apr. 22, 2020) (denying a motion for review of pretrial release by a detainee diagnosed with the virus where he was receiving medical care for COVID-19 while detained, nothing before the Court indicated that

8

he had a plan for medical care should he be released, or that the medical care he might receive in the community was better than that which he is receiving while detained, without continuing to be a threat to the safety of others); *United States v. West*, 2020 WL 1638840, at *2 (D. Md. Apr. 2, 2020) (denying motion for pretrial release where defendant is receiving medical care in jail, has no plan for medical care should he be released, and no evidence that medical care he might receive in the community is better than that which he is receiving in prison, without continuing to be a threat to the safety of others).

In determining whether the defendant establishes a "compelling reason" for temporary release pursuant to § 3142(i), the Court considers four factors: (1) the original grounds for the defendant's pretrial detention, (2) the specificity of the defendant's stated COVID-19 concerns, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others. These factors are particularly instructive in balancing the risk of exposure in prison against the other factors to be considered under the Bail Reform Act.[5] *Veras*, 3:19-CR-010, 2020 WL 1675975, at *5-6; *United States v. Clark*, 19-40068-01-HLT, 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020); *see also United States v. Boatwright*, 2020 WL 1639855, at *8 (D. Nev. Apr. 2, 2020) (analyzing defendant's motion

---

[5] In support of his argument, Green cites to the recent decision in *Thakker v. Doll*, 1:20-CV-480, 2020 WL 1671563 (M.D. Pa. Mar. 31, 2020). In *Thakker*, the Court addressed the civil detention of ICE detainees. Different interests must be balanced in the criminal context, as in this case, where a defendant should be detained only after a finding that no condition or combination of conditions will assure the presence of the defendant and the safety of the community.

using the *Clark* factors and denying the motion where the defendant's motion is speculative, the original grounds for detention remain unchanged, and the risks of exposure are not mitigated for the defendant, and possibly increased for others); *United States v. Lunnie,* 4:19-CR-00180 KGB, 2020 WL 1644495, at *1 (E.D. Ark. Apr. 2, 2020) (motion denied based on analysis of *Clark* factors despite defendant's history of bouts with bronchitis, high blood pressure, and recurring gastrointestinal problems, stemming from a gunshot wound to his abdomen); *United States v. Dodd*, 20-CR-0016 (NEB/HB), 2020 WL 1547419 (D. Minn. Apr. 1, 2020) (denying motion for temporary release after considering the *Clark* factors).

## III.  ANALYSIS

Considering the factors outlined in *Clark*, the Court concludes that Green has not established a compelling reason to grant him temporary release under § 3142(i). The Court has previously concluded that there is no condition or combination of conditions which could reasonably assure the safety of the community should Green be released. In reaching that determination, the Court considered the factors under § 3142 – the weight of the evidence against the defendant; the history and characteristics of the defendant, including Green's prior criminal history, his lack of significant ties to this District, his use of aliases or false documents, and his prior violations of probation, parole, or supervised release; and the danger to the community should he be released. The Court concluded that detention was appropriate because the Government had met its burdens in demonstrating that no condition or combination of conditions could reasonably assure the safety of the community or Green's appearance should he be released.

First, the Court still finds continued detention appropriate under the original grounds for detention. The COVID-19 pandemic has no bearing on either the weight of the evidence

10

against Green or the nature and circumstances of the offenses charged, and these factors continue to weigh squarely in favor of continued detention. The pandemic and Green's health concerns do have some bearing, however, on the third factor under the Bail Reform Act, the nature and characteristics of the defendant. Those "characteristics" include the physical and mental health of the defendant, and being exposed to the COVID-19 virus is a change in that particular characteristic. However, it is but one characteristic contemplated by the Bail Reform Act. The balance of Green's history and characteristics still weighs heavily in favor of detention. There remains no condition or combination of conditions which could reasonably assure the safety of the community or his appearance at future proceedings should Green be released.

Second, although Green submits that his age, diabetes, and heart ailment increase his risks from exposure to the COVID-19 virus, there is nothing in the record reflecting that he is not receiving treatment for his health concerns while in Lackawanna County Prison, or that the prison is not taking steps to mitigate his risk for infection. Although mindful of the magnitude of the COVID-19 pandemic, and the extreme health risks it presents within the jail and prison setting, "a defendant should not be entitled to temporary release under § 3142(i) based solely on generalized COVID-19 fears and speculation." *Boatwright*, 2020 WL 1639855, at *8; *see also Raia*, 2020 WL 1647922, at *2 ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release.")

Third, Green's proposed release plan should be tailored to mitigate the defendant's overall COVID-19 risks, not exacerbate them. *Clark*, 2020 WL 1446895, at *6. If released, Green proposes that he live with an unidentified relative. He does identify the relative or the

location of that relative's home. He does not address other risk factors that would arise if Green were released from custody. *Clark,* 2020 WL at 1446895, at *6. The information offered by the Government establishes that there is a plan to address and mitigate the risks of COVID-19 at the prison. Despite Green's allegations that the prison is unable to manage care of inmates during the pandemic, the information before the Court includes the prison's actual plan to do just that. *Boatwright*, 2020 WL 1639855, at *7.

Finally, the Court considers the likelihood that Green's proposed release would increase COVID-19 risks to others. The Court has previously decided that Green should be detained, in part because he was unable to comply with other court orders, and notes that his lengthy criminal history includes several post-conviction supervision violations. A defendant who is unable to comply with conditions of release poses potential risks to law enforcement officers who are already tasked with enforcing shelter-in-place orders in many cities and counties. *Boatwright*, 2020 WL 1639855, at *8. Green's release poses a substantial risk to the probation officers tasked with monitoring his behavior while he is out of jail on supervised release. *United States v. Lee,* 19-CR-298 (KBJ), 2020 WL 1541049, at *5 (D.D.C. Mar. 30, 2020). If and when Green's proposed temporary release[6] plan ends, it will place the United States Marshals Service officers at risk in re-apprehending him or the facility at risk when he eventually reenters it after having had abundant opportunity for contamination. *See Lunnie*, 2020 WL 1644495, at *5.

---

[6] Having determined that Green does not establish a compelling reason for temporary release under § 3142(i), the Court will not reach what the scope of "temporary" might mean in this situation.

Green also submits that his release is necessary for the preparation of his defense. The Court recognizes that the pandemic may pose obstacles to the preparation of a defense. However, in this case, Green has not established that the restrictions in place at Lackawanna County Prison are such that they are a compelling reason for his temporary release. First, though not ideal, the prison still allows for attorney visits, albeit through a glass window. (Doc. 41-3). Nothing in the measures outlined by the prison indicate that attorney visits or calls are in any other way restricted. (Doc. 41). The Court is confident that the prison will respect the privileged nature of the communications between attorneys and their clients as nothing to the contrary has been brought to its attention to cause concern. Green has not suggested that his situation with regard to consultation with counsel is an urgent one or otherwise distinguishable from that facing other pretrial detainees at this time. *See Dodd*, 2020 WL 1547419 at *3.

IV.    **CONCLUSION**

While the Court is sympathetic to the concerns regarding the spread of COVID-19, and recognizes the potential for Green's exposure to the virus while at Lackawanna County Prison, that potential exists anywhere in the community. Green has not articulated that his particular health issues are not being treated by Lackawanna County Prison, and the prison has taken steps to minimize infection. There is no evidence that Green is not getting the medical attention he needs. Additionally, Lackawanna County Prison has put in place protocols to allow for lawyer-client communications while also protecting against the spread of the virus.

In sum, Green has not presented a "compelling reason" for temporary release under 18 U.S.C. § 3142(i). As such, his motion for pretrial release (Doc. 39), is **DENIED**.

An appropriate Order will follow.

Dated: **April 30, 2020**                                    *s/ Karoline Mehalchick*

**KAROLINE MEHALCHICK**
**United States Magistrate Judge**

14