THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | **No. 3:19-CR-233** |
| v. | : | **(JUDGE MARIANI)** |
| | : | |
| LANCE GREEN | : | |
| | : | |

## MEMORANDUM OPINION
### I. INTRODUCTION

The Motion of Defendant, Lance Green, to Dismiss for Violation of the Speedy Trial

Act and the United States Constitution (Doc. 34) is pending before the Court.  With the

Motion, Defendant argues that more than seventy non-excludable days have elapsed since

his Indictment in violation of the Speedy Trial Act, 18 U.S.C. § 3161.  (Doc. 34 ¶ 5.)  He also

argues that the period of delay runs afoul of his right to a speedy trial afforded by the Sixth

Amendment of the United States Constitution.  (Doc. 34 ¶ 4.)  For the reasons discussed

below, the Court concludes that more than seventy non-excludable days passed in violation

of the Speedy Trial Act, the charges against Defendant are properly dismissed without

prejudice, and Defendant's Sixth Amendment right to a speedy trial has not been violated.

### II. BACKGROUND

The relevant background of this case begins with Defendant's arrest on October 5,

2017, by the Kingston Municipal Police Department which led to Pennsylvania state law

charges and to his Indictment on January 23, 2018, by a federal grand jury for Prohibited

Person in Possession of a Firearm, 18 U.S.C. § 922(g), and Possession of a Firearm with

an Obliterated Serial Number, 18 U.S.C. § 922(k), under docket number 3:18-CR-21.[1]

(Doc. 37 at 6.)  Defendant was arraigned on these charges before Magistrate Judge Joseph

F. Saporito on February 13, 2018, and pled not guilty to the charges in the Indictment.

(3:18-CR-21 Doc. 20.)  Magistrate Judge Saporito appointed CJA Attorney Gino Bartolai,

Esquire, to represent Defendant (Doc. 19) and ordered Defendant detained pending trial

(Doc. 21).

Also on February 13, 2018, District Judge A. Richard Caputo scheduled the matter

for trial on April 23, 2018, and set March 13, 2018, as the deadline for filing pretrial motions

---

[1] In his brief in support of his Motion to Dismiss for Violation of the Speedy Trial Act, Defendant provided the following background information regarding the period before his January 23, 2018, federal Indictment:

Defendant, Lance Green("Green") was taken into custody after a traffic stop on October 5, 2017 by police officers of the Borough of Kingston, Pennsylvania in Luzerne County, PA. Green was detained as a result of the stop. A search with a warrant was subsequently performed on property Green allegedly occupied or possessed at 143 Second Avenue, Kingston, PA. Records submitted by the United States during discovery indicate that Federal ATF participated in this search. The search produced a firearm with an obliterated serial number. Green was arrested on that date by Kingston Borough officials and charged under state law with possession of a firearm with an obliterated serial number and with unlawful possession of a firearm.

(3:18-CR-21 Doc. 66 at 2.)  In its opposition brief, the Government provides the following information for the pre-indictment period:

On or about October 5, 2017, the Kingston Municipal Police Department arrested the defendant, Lance Green, for aggravated assault, in violation of 18 Pa.C.S.A. § 2702, possessing a firearm with obliterated serial numbers, in violation of 18 Pa.C.S.A. § 6117, possessing a firearm while prohibited, in violation of 18 Pa.C.S.A. § 6105, firearms not to be carried without a license, in violation of 18 Pa.C.S.A. § 6106, terroristic threats, in violation of 18 Pa.C.S.A. § 2706 and simple assault, in violation of 18 Pa.C.S.A. § 2701.

(3:18-CR-21 Doc. 67 at 1-2.)

2

and briefs. (Doc. 22.) On March 15, 2018, Judge Caputo granted Defendant's motion for an extension of time to file pretrial motions, extending the deadline to April 12, 2018. (Docs. 24, 25.) On April 12, 2018, Judge Caputo granted Defendant's second motion for an extension of time to file pretrial motions, extending the deadline to May 14, 2018. (Docs. 26, 27.) On May 14, 2018, Judge Caputo granted Defendant's third motion for an extension of time to file pretrial motions, extending the deadline to June 13, 2018. (Docs. 28, 29.) No pretrial motions were filed prior to that deadline.

On September 26, 2018, Defendant filed a Motion for Leave to File Motion to Suppress Evidence Obtained as Result of Illegal Arrest Nunc Pro Tunc (Doc. 35) and on the same day filed the Motion to Suppress Evidence Obtained as a Result of Illegal Arrest (Doc. 36). Judge Caputo granted the Motion for Leave to File Motion to Suppress Evidence Obtained as Result of Illegal Arrest Nunc Pro Tunc (Doc. 35) on October 1, 2018. (Doc. 39.) By Memorandum and Order of November 28, 2018, Judge Caputo denied the motion to suppress. (Docs. 41, 42.)

On November 29, 2018, he set the matter for trial to commence on December 17, 2018. (Doc. 44.) On December 6, 2018, Defendant filed an unopposed motion to continue trial which Judge Caputo granted on December 13, 2018. (Docs. 45, 46.) By Order of December 13, 2018, Judge Caputo set the trial for April 30, 2019. (Doc. 46.)

Attorney Bartolai filed a Motion for New Counsel on January 20, 2019, and Judge Caputo appointed Enid Harris, Esquire, on January 29, 2019. (Docs. 47, 51.) On February

3

21, 2019, Attorney Harris filed the Motion to Withdraw as Counsel Due to Conflict of Interest which Judge Caputo granted by Order of February 27, 2019.  (Docs. 55, 57.)  On March 6, 2019, Joseph O'Brien, Esquire, was appointed to represent Defendant.  (Doc. 58.)

On April 18, 2019, Defendant filed a motion to continue the trial.  (Doc. 59.)  Judge Caputo granted the motion and set the trial for June 3, 2019.  (Doc. 60.)

On May 13, 2019, Defendant filed the Motion to Continue Trial and for Leave to File Motion to Dismiss for a Violation of the Speedy Trial Act which Judge Caputo granted by Order of May 14, 2019.  (Docs. 61, 62).  On June 3, 2019, Defendant filed a motion for extension of time to file his motion to dismiss which Judge Caputo granted on June 5, 2019, setting June 10, 2019, as the deadline for filing the motion.  (Docs. 63, 64.)  Defendant filed the motion and supporting brief on June 10, 2019, and the Government filed its brief in opposition on June 21, 2019.  (Docs. 65-67.)  Defendant filed a motion for an extension of time to file a reply which was granted, and Defendant filed his reply brief on July 15, 2019. (Docs. 68-70.)  By Memorandum of July 19, 2019, Judge Caputo agreed that more than seventy non-excludable days elapsed from June 13, 2018, until September 26, 2018, in violation of the Speedy Trial Act, 18 U.S.C. 3161(c)(1).  (Doc. 71 at 4.)  He noted that the Government conceded that one hundred and thirty-three non-excludable days ran between Defendant's initial appearance and the filing of Defendant's Motion to Suppress on September 26, 2018.  (*Id.* at 4 (citing Doc. 67 at 5).)  Judge Caputo then considered the statutory factors set out in 18 U.S.C. § 3161(c)(1) relevant to the determination of whether

4

the Indictment should be dismissed with or without prejudice and concluded that the factors weighed in favor of dismissal without prejudice. (*Id*.) Therefore, by Order of July 19, 2019, Judge Caputo granted the Motion to Dismiss the Indictment pursuant to the Speedy Trial Act and dismissed the Indictment without prejudice. (Doc. 72.)

On the same day as the dismissal of Indictment in 3:18-CR-21, the Government filed a criminal complaint and charged Defendant with the same two offenses set out in the Indictment (3:19-MJ-57 Doc. 1). A grand jury indicted Defendant on July 30, 2019, and Defendant had his initial appearance before Magistrate Judge Karoline Mehalchick on July 31, 2019, where he entered a plea of not guilty and was appointed CJA attorney Joseph O'Brien, Esquire. (Docs. 12, 16.) On motion of the Government attorney, Magistrate Judge Mehalchick ordered Defendant detained pending trial. (Doc. 18.)

On August 1, 2019, Judge Caputo issued a scheduling Order directing all pretrial motions to be filed by August 20, 2019, and setting jury selection and trial for October 7, 2019. (Doc. 19.) On September 27, Defendant filed a motion to amend the scheduling Order and requested an extension of time until October 21, 2019, to file pretrial motions. (Doc. 20.) On October 2, 2019, Judge Caputo granted Defendant's request and indicated that a trial date would be set after the expiration of the motion deadline. (Doc. 21.) On October 21, 2019, Defendant filed the Motion to Suppress Evidence as a Result of Unconstitutional Search and Seizure and supporting brief. (Docs. 22, 23.) The government filed its response in opposition on October 29, 2019. (Doc. 24.) On December

2, 2019, Judge Caputo issued a Memorandum Order denying Defendant's motion. (Doc. 25.)

On December 4, 2019, the Government filed the Motion to Set Trial Date in which it indicated that "[t]he Speedy Trial time expires on December 13, 2019" and requested the Court to schedule a trial immediately. (Doc. 26 ¶¶ 7, 8.) On December 18, 2019, at the request of the government, Judge Caputo held a conference call with counsel for the Government and counsel for Defendant regarding the Government's Motion to Set Trial Date (Doc. 26). (Doc. 37 at 8.) On the same day, the case was reassigned to the undersigned for all further proceedings by verbal order.

On December 19, 2019, both parties participated in a conference call with this Court. Defense counsel indicated that he would be filing a motion to dismiss based upon a Speedy Trial Act violation by the end of the year. Government counsel reports that she contacted Defendant's counsel on January 3, 2020, because no motion had been filed and he indicated that his client no longer wanted a motion to dismiss filed. (Doc. 37 at 8.) Government counsel also reports that she again spoke with Defendant's counsel on January 6, 2020, and he again stated Defendant did not want the motion filed. (*Id.* at 9.) On the same day, Government counsel notified the Court that no motions would be filed. (*Id.*)

The Court issued an Order on January 6, 2020, setting the case for trial on January

22, 2020.  (Doc. 30.)   The Court stated the following as to the calculation of time for Speedy

Trial Act purposes:

> Without ruling for Speedy Trial purposes on the period of time between
> December 4, 2019, when the Government filed its motion to set a trial date,
> and December 18, 2019, when this case was re-assigned to the undersigned,
> the time between December 19, 2019, the date of the Court's conference call
> with counsel, and the date of this Order shall be excluded from speedy trial
> calculation pursuant to 18 U.S.C. § 3161(h)(7) as the Court's continuance in
> setting a trial date was based on a finding that the ends of justice were served
> by delaying the scheduling of trial, and those interests outweigh the best
> interest of the public and the defendant in a speedy trial.  Such time was
> necessary for the parties to confer as to how to best proceed in this action,
> including conferring and performing adequate research as to whether there
> was any violation of the Speedy Trial Act, as well as to allow Defendant's
> counsel sufficient time to confer with his client and determine how Mr. Green
> wanted to proceed in this matter and how to best represent Mr. Green's
> interests.  Further, the time between the date of this Order and the date of trial
> shall also be excluded from speedy trial calculation pursuant to 18 U.S.C. §
> 3161(h) such as to allow counsel the reasonable time necessary for effective
> preparation, taking into account the exercise of due diligence.

(Doc. 30 ¶ 11.)

Defendant's counsel subsequently requested a telephone conference which the

Court scheduled by Order of January 13, 2020, for January 14, 2020.  (Doc. 31.)  At the

telephone conference, Defendant's counsel informed the Court that Defendant wanted to

file a Speedy Trial Act motion and move for DNA related discovery.  Defendant filed his

Speedy Trial Act motion under consideration here on January 21, 2020.  (Doc. 34)  On

January 22, 2020, the Court continued the trial, to be rescheduled if necessary following

resolution of Defendant's motion.  (Doc. 35.)  After the motion was fully briefed, the Court set a hearing for June 24, 2020.  (Doc. 45.)

On April 3, 2020, Defendant filed the Motion of Defendant, Lance Green, for Reconsideration of Detention Order seeking his release under 18 U.S.C. § 3142(i) for reasons related to the COVID-19 pandemic and the preparation of Defendant's defense. (Doc. 39.)   This motion was referred to Magistrate Judge Mehalchick who denied it by Memorandum and Order of April 30, 2020.  (Docs. 43, 44.)

On June 18, 2020, Defendant filed the Motion of Defendant, Lance Green, for Pretrial Release.  (Doc. 46.)  He states that the basis for his motion is the same as that set out in his April 3, 2020, motion and relevant briefing.  (*Id*. ¶ 2.)  He also asked that the Court allow him to address the issue at the June 24, 2020, hearing.  (*Id.* ¶ 3.)

At the hearing held on June 24, 2020, the Court heard argument on both the speedy trial and release motions.  On June 25, 2020, the Court issued the Order Setting Conditions of Release with which the Court ordered that Defendant be released on personal recognizance subject to numerous specific conditions.  (Doc. 48)

## II. ANALYSIS

### A. Speedy Trial Act Violation

The issue of whether the Speedy Trial Act was violated hinges on whether the Government's December 4, 2019, Motion to Set Trial Date (Doc. 26) is considered a motion under 18 U.S.C. § 3161(h)(1)(D) such that the time it was pending before December 19,

8

2020, would be excluded in computing the time when the trial must commence. In its

December 4, 2019, Motion to Set Trial Date, the Government indicated that "[t]he Speedy

Trial time expires on December 13, 2019" and requested the Court to schedule a trial

immediately.[2] (Doc. 26 ¶¶ 7, 8.) For the reasons discussed below, the Court concludes

that a violation of the Speedy Trial Act has occurred and the Indictment must be dismissed.

The Speedy Trial Act provides as follows:

> In any case in which a plea of not guilty is entered, the trial of a defendant
> charged in an information or indictment with the commission of an offense
> shall commence within seventy days from the filing date (and making
> public) of the information or indictment, or from the date the defendant has
> appeared before a judicial officer of the court in which such charge is
> pending, which ever date last occurs.

18 U.S.C. § 3161(c)(1). Section 3161(h) addresses what periods of time are excludable in

calculating the time within which a trial must commence. It specifically provides the

following in pertinent part:

> h) The following periods of delay shall be excluded in computing the time
> within which an information or an indictment must be filed, or in computing
> the time within which the trial of any such offense must commence:
>
> (1) Any period of delay resulting from other proceedings concerning the
> defendant, including but not limited to—
>
> . . . .
>
> (D) delay resulting from any pretrial motion, from the filing of the motion
> through the conclusion of the hearing on, or other prompt disposition of,
> such motion.

---

[2] The Government clarified that "[t]he technical date of expiration of the Speedy Trial period is
December 14, 2019. However, that date was a Saturday." (Doc. 37 at 10 n.3.)

18 U.S.C. § 3161(h)(1)(D). Section 3162 provides that the defendant has the burden

of proof supporting a motion claiming a Speedy Trial Act violation.  18 U.S.C. §

3162(a)(2).  It further provides that

> [i]n determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2).

As noted above, the first question at issue here is whether the Government's

Motion to Set Trial Date (Doc. 26) filed on December 4, 2019, triggered the

excludable time provision of § 3161(h)(1)(D).  Defendant contends that the motion

did not toll the Speedy Trial clock while the Government has argued that it did.  (Doc.

36 at 5-7; Doc. 37 at 10-14.)  The parties agree that the Court of Appeals for the

Third Circuit has not addressed the issue of whether a motion to set a trial date tolls

the speedy trial clock.  However, each party relies on authority from other circuits in

support of their respective positions.

Defendant urges the Court to follow the Eleventh Circuit's decision in *United

States v. Brown*, 285 F.3d 959 (11th Cir. 2002), where the Circuit Court stated that

> a document that does nothing more than remind the court that it must set a case for trial under the terms of the Speedy Trial Act is not a motion within the meaning of 18 U.S.C. § 3161(h)(1)(F), resulting in time excluded from that set forth in 18 U.S.C. § 3161(c).

*Id.* at 962.[3]  The Government urges the Court to follow *United States v. Bonilla-Filomeno,* 579 F.3d 852 (8th Cir. 2009), where the Circuit Court affirmed the trial court's denial of the defendant's speedy trial motion after finding that the government's motion to set a specific trial date was properly considered as a motion to continue which supported the exclusion of time from its filing to the trial date.  (579 F.3d at 856-57.)

The Court concludes that the facts of this case are more akin to the "reminder" described in *Brown*: the Government's December 4, 2019, motion merely stated the date on which the Speedy Trial time would expire (December 13, 2019) and requested the Court to schedule a trial immediately.  (Doc. 26 ¶¶ 7, 8.)  In *Bonilla-Filomeno*, the government's motion requested a specific trial date which was beyond the seventy-day Speedy Trial Act period and noted that the defendant had no objection to its request.  579 F.3d at 855-56.  Both of these factors were found relevant by the Circuit Court, *id.*, and neither of them exists here.  At the June 24, 2020, Motion Hearing, Government counsel agreed that the facts found relevant by the Eighth Circuit in *Bonilla-Filomeno* are not present here and the facts related to the December 4, 2020, motion squarely fit with those considered by the Eleventh Circuit in *Brown*.  (June 24, 2020, Motion Hearing Transcript (hereinafter "Hr'g Tr.") 3:6-5:25.)  Based on the foregoing, the Government's Motion to Set Trial Date (Doc. 26) filed on December 4, 2019, was not a motion which triggered the excludable time provision of §

---

[3] In 2008, 18 U.S.C. § 3161(h)(1)(F) was redesignated as 18 U.S.C. § 3161(h)(1)(D).  Judicial Administration and Technical Amendments Act of 2008, Pub.L. 110-406, § 13, Oct. 13, 2008, 122 Stat. 4294.

11

3161(h)(1)(D).  From this determination, it follows that the Speedy Trial Act was violated

because the trial did not commence within the seventy-day time period allowed pursuant §

3161(c)(1).

Having found that Defendant was not brought to trial within the time limit required by

section 3161(c) as extended by section 3161(h), the Court must dismiss the indictment.  18

U.S.C. § 3162(a)(2).  The question remains whether the dismissal should be with or without

prejudice.  *Id.*

## B.  Dismissal With or Without Prejudice

Defendant argues that dismissal should be with prejudice, primarily because his

previous identical case was dismissed without prejudice based on a violation of the Speedy

Trial Act.  (Doc. 36 at 10.)  The Government responds that the Indictment should be

dismissed without prejudice because the relevant factors weigh in favor of this

determination. (Doc. 37 at 15-20.)  Upon careful consideration of the statutorily enumerated

factors and others relevant to this case, the Court concludes that dismissal without prejudice

is warranted.

As set out above, to determine whether the dismissal should be with or without

prejudice, the Court must consider, among other factors, the "the seriousness of the

offense; the facts and circumstances of the case which led to the dismissal; and the impact

of a reprosecution on the administration of this chapter and on the administration of justice."

18 U.S.C. § 3162(a)(2).  "Where, as [in section 3162(a)(2)], Congress has declared that a

decision will be governed by consideration of particular factors, a district court must carefully

consider those factors as applied to the particular case and, whatever its decision, clearly

articulate their effect in order to permit meaningful appellate review." *United States v.*

*Taylor*, 487 U.S. 326, 336 (1988); *United States v. Stevenson*, 832 F.3d 412, 419 (3d Cir.

2016) (quoting *Taylor*, 487 U.S. at 336)).  In *United States v. Taylor*, the Supreme Court

identified the presence or absence of prejudice to the defendant as a relevant factor.  487

U.S. at 334.  Therefore, the Court will analyze the three statutory factors as well as

prejudice to Defendant.  Because the Third Circuit analyzes prejudice as a component of

the third statutory factor, *Stevenson*, 832 F.3d at 422, the Court will do the same.[4]

---

[4] *Stevenson* footnotes its formulation of the third factor inquiry with an explanation of consideration of prejudice to the defendant:

> [t]he Supreme Court has suggested that prejudice to the defendant is among the "other[ ]" non-express factors that the Speedy Trial Act directs district courts to consider. *See Taylor*, 487 U.S. at 333–34, 108 S.Ct. 2413 (gleaning from the legislative history "the relevance of prejudice to the defendant"); *id.* at 344, 108 S.Ct. 2413 (Scalia, J., concurring in part) (arguing that the facts "(1) that prejudice to the defendant is one of the factors that the phrase 'among others' in § 3162(a)(2) refers to, and (2) that that factor is not necessarily determinative [are] so utterly clear from the text of the legislation that there is no justification for resort to the legislative history"). Courts have widely recognized, however, that this technically distinct factor often fits quite naturally into assessments of the third express factor. *See, e.g.*, *United States v. Sykes*, 614 F.3d 303, 309 (7th Cir. 2010) ("That the court should consider whether the defendant has been prejudiced is implicit in th[e] broadly stated formula [of § 3162(a)(2) ]."); *United States v. Godoy*, 821 F.2d 1498, 1506 (11th Cir. 1987) ("The third factor makes clear the flexible, balancing approach required under § 3162(a)(1). In addition, it provides authority for considering such aggravating and mitigating factors as the length of the delay and the prejudice to the defendant."); *Campbell v. United States*, 364 F.3d 727, 731 (6th Cir. 2004).

*Stevenson*, 832 F.3d at 422 n.8.

In *United States v. Hastings*, 847 F.2d 920 (1st Cir. 1988), the First Circuit Court of

Appeals provided context for the considerations identified in 18 U.S.C. § 3162(a)(2),

explaining that the

> construct was intended as a compromise, gleaned from many sources and
> addressed to diverse constituencies. *See generally* [A. Partridge, *Legislative
> History of Title I of the Speedy Trial Act of 1974* (1980), at 197–218. We are
> satisfied, based on the historical record, that the three-pronged test was crafted
> to encourage judges to weigh both private and public interests when
> determining whether or not to foreclose reprosecution. *See* [*United States v.
> Caparella,* 716 F.2d 976, 978–81 (2d Cir. 1983)] (analyzing legislative history).
> The omnibus clause of section 3162(a)(2), of course, allows a court to widen
> the lens of inquiry, but only slightly. Any extraneous matters to be considered
> must be rationally related to the balancing objectives of the tripartite test. Thus,
> a district court may factor into the Act's calculus, for example, items such as
> the length of the delay and the prejudice to the defendant stemming from the
> violation (or conversely, the absence of prejudice). *See* [*United States v.
> Brown,* 770 F.2d 241, 245 (1st Cir. 1985)]. *Accord United States v. Bittle,* 699
> F.2d 1201, 1208 (D.C. Cir. 1983). The approach, ultimately, is discretionary,
> permitting the trial judge to examine a variety of serviceable fabrics and
> measurements, and custom-tailor an order of dismissal to suit the exigencies
> and equities of a particular case.

*Hastings*, 847 F.2d at 924.

### 1. Seriousness of the Charges

Defendant does not dispute the seriousness of the charges, but states that the

seriousness of the charges should be considered in his favor because he has had them

"hanging over his head for multiple years" in that the previous case with the same charges

was dismissed due to a speedy trial violation. (Doc. 38 at 5.) The Government supports the

seriousness of the offense with the assertion that the consideration of the length of the

potential sentence is relevant and, in this case, indicates that Defendant's armed career

criminal status means that he faces a mandatory minimum of fifteen years of incarceration

and an anticipated guideline range of 235-293 months upon conviction.  (Doc. 37 at 15

(citing *United States v. Stevenson*, No. 3:12-CR-145, 2014 WL 12705000, at *4 (M.D. Pa.

Sept. 4, 2014) ("The fact that [the defendant] faces a long period of incarceration if

convicted illustrates the seriousness of th[e] offense.")  The Court concludes that this factor

weighs in favor of the Government.

The Third Circuit stated in *Stevenson* that the first § 3162(a)(2) factor, the

seriousness of the offense,

> "centers primarily on society's interest in bringing the particular accused to
> trial." *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988). The logic
> behind this factor is intuitive: "[t]he graver the crimes, the greater the insult to
> societal interests if the charges are dropped, once and for all, without a
> meaningful determination of guilt or innocence." *Id.*

*Stevenson*, 832 F.3d at 419–20. *Stevenson* noted that the District Court rightly held that the

defendant's heroin and firearms offenses are serious offenses for purposes of the Speedy

Trial Act and, on this basis, rightly held that the first factor weighed in favor of dismissal

without prejudice. *Id.* at 420.

Although here Defendant is charged only with firearms offenses, this fact does not

undermine the seriousness of the charged offenses.  As noted by a panel of the Eleventh

Circuit in *United States v. Jones*, 241 F. App'x 676, 679 (11th Cir. 2007), the fact that the

defendant "had not been caught using the gun or committing violent acts does not detract

from the fact that [he] was a repeated felon who possessed firearms."  *Jones* then found

15

that the defendant's 18 U.S.C. § 922(g)(1) offense was serious enough to weigh in favor of dismissal without prejudice. *Id.*

Based on relevant authority and the agreement of the parties on this issue, the Court concludes that the 18 U.S.C. § 922 charges alone are serious, especially in the circumstance here where the potential penalty for these offenses may be extensive based on armed career criminal status and criminal history category. Therefore, the Court concludes that the first factor weighs in favor of dismissal without prejudice.

### 2. Facts and Circumstances that Led to Dismissal

Defendant asserts that the second factor weighs in his favor because this is the second Speedy Trial Act violation which "establishes a pattern." (Doc. 38 at 6.) The Government contends that it has not caused any of the delays in the case and used due diligence in attempting to bring the case to trial. (Doc. 37 at 16.)

*Stevenson* explained that the second factor—the facts and circumstances that led to dismissal—requires courts to consider the reasons for the delay:

> did it stem from "intentional dilatory conduct" or a "pattern of neglect on the part of the Government," or rather, from a relatively benign hitch in the prosecutorial process? *United States v. Cano-Silva*, 402 F.3d 1031, 1036 (10th Cir. 2005) ("In determining whether the facts and circumstances warrant dismissal with prejudice we focus on the culpability of the conduct that led to the delay."); *see also United States v. Blevins*, 142 F.3d 223, 226 (5th Cir. 1998) ("Regarding the facts and circumstances leading to the dismissal, we look to whether the Government sought the resultant delays for ulterior purposes as well as whether the Government's failure to meet deadlines was repetitive, regular, and frequent with respect to this defendant.").

*Stevenson*, 832 F.3d at 420.

In scrutinizing the circumstances which gave rise to the speedy trial violation--the

focus on the culpability of the delay-producing conduct--the conduct of the court is included

in the equation. *Hastings*, 847 F.2d at 925. As stated in *United States v. Pringle*, 751 F.2d

419 (1st Cir. 1984),

> the Act controls the conduct of the parties and the court itself during criminal
> pretrial proceedings. Not only must the court police the behavior of the
> prosecutor and the defense counsel, it must also police itself. The Act is as
> much aimed at the delay caused by judicial congestion and mismanagement
> as it is aimed at the deliberate stalling of counsel. 120 Cong. Rec. 41618 (1974)
> (statement of Sen. Ervin).

751 F.2d at 429; *see also United States v. Bert*, 814 F.3d 70, 80 (2d Cir. 2016). "Where . . .

the delay-causing conduct is attributable to the sovereign (the court or the prosecutor), it

inveighs progressively in favor of the accused. As we see it, the appropriateness of barring

reprosecution increases in relatively direct proportion to the degree of culpability which

attaches." *Hastings*, 847 F.2d at 925. The Supreme Court has instructed that "something

more than an isolated unwitting violation," must be found to support a dismissal with

prejudice, as exemplified by a finding that "the Government acted in bad faith with respect to

the [defendant] [or] the court['s] discovery of a pattern of neglect by the local United States

Attorney." *Taylor*, 487 U.S. at 339.

The facts and circumstances which lead to the dismissal of this case do not show

bad faith on the part of the Government. Nor do they show that the Government caused

delays. As the Government properly points out, Defendant's pretrial motions were not filed

until ten days before the scheduled trial date at which time 58 days of unexcludable time

had lapsed, and this left only twelve days in which to bring the case to trial after the Court

decided the pretrial motions. (Doc. 37 at 16.) Two days after the motions were decided on

December 2, 2019, the Government filed its Motion to Set Trial Date (Doc. 26). At the

Motion Hearing, Government counsel explained the situation as follows:

> The Court issued an order stating it would set a trial date once pretrial motions
> were disposed of. Pretrial motions were disposed of on December 2nd. The
> government waited two days to -- before requesting a trial date waiting to see
> whether or not the Court would issue the trial date consistent with its prior order
> of scheduling a trial date. By that time -- by the time the Court issued its order
> denying the pretrial motions, there were only 12 days left on the speedy trial
> clock, not due to anything the government did. The government would have
> went to trial on October 7th, but it was due to the delay in filing the pretrial
> motions.
>
> . . . Not only did the government file the motion to set the trial date, but
> once the Court did not respond to that motion, the government actually
> contacted Judge Caputo's chambers, the Court, to find out whether or not
> something was actually going to be done, and that's when a conference call
> was scheduled based upon the government's contact with the Court to its
> motion because nothing had been done, and the conference call was
> scheduled December 18th.

(Hr'g Tr. 8:15 -9:11.)

There being no docket entries between December 4, 2019, and December 18, 2019,

when this case was reassigned, the Court cannot determine precisely what transpired

during this time. However, even if the Court were to attribute some degree of negligence to

the conduct of the Government and the Court, such conduct would not warrant dismissal

with prejudice because there is no evidence of bad faith with respect to Defendant or a

pattern of neglect by the local United States Attorney. *Taylor*, 487 U.S. at 339.

The tight timeline for the case to be brought to trial following the Court's December 2,

2019, Memorandum Order denying Defendant's Motion to Suppress (Doc. 25) was not

caused by any delay attributable to the Government.  Rather, Defendant's late filing of his

first pretrial motion on September 27, 2019, with which he sought to amend the scheduling

order setting the pretrial motion deadline at August 20, 2019, and extend it to October 21,

2019, (Doc. 20) caused a delay in this matter going to trial on October 7, 2019.  Further,

because the Speedy Trial clock stopped with only twelve days remaining as fifty-eight (58)

days lapsed between his initial appearance and September 27, 2019, the tight timeline to

get the case to trial is attributable to Defendant.

As set out above, section 3162 provides that the defendant has the burden of proof

supporting a motion claiming a Speedy Trial Act violation.  18 U.S.C. § 3162(a)(2).  Here,

Defendant relies almost exclusively on the fact that this is the second prosecution for the

same charges and the second time the Speedy Trial Act has been violated.  (Doc. 36 at 10.)

He notes that the Second Circuit stated in *United States v. Giambrone*, 920 F.2d 176, 181,

(2d Cir. 1990), that "'[a] pattern of disregard for speedy trial rights is also detrimental to the

administration of the criminal justice system since delays risk the loss of important evidence,

and repetitive prosecutions on the same charges cause wasteful replication of effort.'"  (Doc.

36 at 10.)  Defendant identifies the "detrimental effect of continued pre-trial incarceration"

and the fact that his "liberty has been withheld[,] [and] [h]e has been unable to work, see family and friends, or otherwise pursue life as a free man." (*Id.*)   However, Defendant does not identify "a pattern of disregard for speedy trial rights" caused by delays attributable to the Government.   Defendant does not point to any delay caused by the Government or any intentional misconduct on the part of the prosecution, but rather relies generally on the Government's failure to comply with the Speedy Trial Act by bringing Defendant to trial within the allotted time.   (Doc. 36 at 10; Hr'g Tr. at 24.)

Although this is the second Speedy Trial Act violation as to Defendant, that fact alone does not warrant dismissal with prejudice.   In *United States v. Blevins*, the Fifth Circuit concluded that a District Court did not abuse its discretion in dismissing an indictment without prejudice although the dismissal resulted from a second sequential violation of the Speedy Trial Act.   142 F.3d at 223.   As recognized with approval in *Stevenson*, *Blevins'* analysis of the second factor pointed to "whether the Government sought the resultant delays for ulterior purposes as well as whether the Government's failure to meet deadlines was repetitive, regular, and frequent with respect to this defendant."   *Stevenson*, 832 F.3d at 420 (quoting *Blevins*, 142 F.3d at 226).   As discussed above, no argument or evidence suggests that the Government was the cause of any delay.   This is true for both cases: of the eighteen pretrial motions filed in 3:18-CR-21 (Docs. 6, 24, 26, 28, 33, 35, 36, 45, 47, 48, 49, 53, 55, 59, 61, 63, 65, 68) only one was filed by the Government and that was a motion filed on January 23, 2018, to seal the Indictment and Arrest Warrant (Doc. 6); of the seven

motions filed in 3:19-CR-233 (Docs. 10, 20, 22, 26, 34, 39, 46) only one was filed by the Government and that was the Motion to Set Trial Date (Doc. 26) discussed above.  Thus, although over seventy days lapsed under the Speedy Trial Act in each case, the Government did not repetitively, regularly, and frequently fail to meet deadlines in either case.

On this record, the Court concludes that Defendant has not satisfied his burden of showing that the facts and circumstances that lead to dismissal in this case warrant dismissal with prejudice.  Therefore, this factor weighs in favor of dismissal without prejudice.

### 3. The Impact of a Reprosecution on the Administration of the Speedy Trial Act and on the Administration of Justice

Defendant asserts that the third factor weighs in his favor because he has suffered prejudice.  (Doc. 38 at 5-6.)  The Government contends that this factor weighs in favor of dismissal without prejudice because Defendant has not articulated any prejudice other than enforcement of the Speedy Trial Act.  (Doc. 37 at 18.)

"'The main considerations that courts have taken into account when examining this factor are whether the defendant suffered actual prejudice as a result of the delay and whether the government engaged in prosecutorial misconduct that must be deterred to ensure compliance with the Act.'"  *Stevenson*, 832 F.3d at 422 (quoting *United States v. Howard*, 218 F.3d 556, 562 (6th Cir. 2000) (internal citation and quotation marks omitted)).

Regarding prejudice to the defendant, the Supreme Court explained in *United States*

*v. Taylor* that

> [t]he length of delay, a measure of the seriousness of the speedy trial violation,
> in some ways is closely related to the issue of the prejudice to the defendant.
> The longer the delay, the greater the presumptive or actual prejudice to the
> defendant, in terms of his ability to prepare for trial or the restrictions on his
> liberty:
>
> > [I]nordinate delay between public charge and trial, ... wholly
> > aside from possible prejudice to a defense on the merits, may
> > 'seriously interfere with the defendant's liberty, whether he is free
> > on bail or not, and ... may disrupt his employment, drain his
> > financial resources, curtail his associations, subject him to public
> > obloquy, and create anxiety in him, his family and his friends.

487 U.S. at 340-41 (quoting *Barker v. Wingo,* 407 U.S. 514, 537 (1972) (White,

J., concurring).  The Court added that "although the absence of prejudice is not dispositive,

[it can be] another consideration in favor of permitting reprosecution." 487 U.S. at 341.

At the Motion Hearing, the Government argued that

> [w]ith regard to the third factor, with consequences following reprosecution,
> there's no allegation of loss of evidence. In fact, in this particular case, on two
> occasions defense counsel had mentioned that they would like to hire a DNA
> expert. So not only is there not any type of prejudice, but it actually would
> benefit the defendant to have the extra time so they can hire a DNA expert.
> There's no misconduct by the government to deter in order to -- that would
> benefit from dismissing this case with prejudice because there just was not any
> misconduct by the government.

(Hr'g Tr. 13:6-15.)

In response, Defendant's counsel stressed the fact that Defendant had been in jail

for over 900 days (Defendant clarified that it was 967 days (H'rg Tr. 28:18)) and the

22

Government should not "be given a third bite at the apple." (Hr'g Tr. 25:1-6.) He added that

there were two eyewitnesses to the alleged events that his investigator had been unable to

find and Defendant had not been able to contact people because of his incarceration. (Hr'g

Tr. 25:9-14.) Defendant's counsel concluded by saying "when you're in jail that long in

trying to defend yourself in a case that's going to involve eyewitness testimony what some

witness saw and what they said, you know, there should be some type of presumption of

prejudice you can't defend yourself." (Hr'g Tr. 25:15-19.)

The Court disagrees with the Government that Defendant has not alleged any type

of prejudice—Defendant's incarceration since his initial indictment on January 23, 2018, has

"seriously interfere[d]" with Defendant's liberty—he was incarcerated for 967 days as of the

June 24, 2020, Motion Hearing. *See Taylor*, 487 U.S. at 340-41. However, as discussed

above, much of the delay during this period was brought about by motions filed by

Defendant. Further, the record does not show that the government engaged in

prosecutorial misconduct and, therefore, no deterrence is needed to ensure compliance with

the Act. *Stevenson*, 832 F.3d at 422. Thus, after careful consideration of the factors

identified in *Stevenson*, the Court concludes that the administration of the Speedy Trial Act

and the administration of justice element weighs in favor of dismissal without prejudice.

Of necessity, before determining the proper disposition of the pending motion, the

Court will analyze Defendant's Sixth Amendment claim since, if that claim is granted, he

would be entitled to dismissal of the charges against him with prejudice, *see Strunk v. U.S.*, 412 U.S. 434, 439–40 (1973).

## C. <u>Sixth Amendment</u>

Defendant also argues that the Court should dismiss his case due to his right to a speedy trial under the Sixth Amendment of the United States Constitution. (Doc. 36 at 7.) The Government responds that no Sixth Amendment violation has occurred, "even if the Court takes into account the dismissal of the prior indictment." (Doc. 37 at 20.)

In relevant part, the Sixth Amendment guarantees the accused "the right to a speedy and public trial." U.S. CONST. amend. VI. "Congress enacted the Speedy Trial Act to 'give effect to the Sixth Amendment right to a speedy trial' by setting specified time limits after arraignment or indictment within which criminal trials must be commenced." *United States v. Rivera Const. Co.*, 863 F.2d 293, 295 (3d Cir. 1988) (citing H.R. Rep. No. 1508, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S. Code Cong. & Admin. News 7401, 7402). Thus, the protections of the Speedy Trial Act "exceed those of the Sixth Amendment, which does not require that a trial commence within a specified time." *Lattany*, 982 F.2d at 870 n.5. However, because the Speedy Trial Act "was enacted largely to make defendants' constitutional speedy trial rights meaningful, many courts have noted that 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the sixth amendment right to speedy trial has been violated.'" *United States v. Alvin*, 30 F. Supp. 3d

323, 340 (E.D. Pa. 2014) (quoting *United States v. Nance,* 666 F.2d 353, 360 (9th Cir.

1982)).

As explained by the Supreme Court:

Our speedy trial standards recognize that pretrial delay is often both inevitable and wholly justifiable. The government may need time to collect witnesses against the accused, oppose his pretrial motions, or, if he goes into hiding, track him down. We attach great weight to such considerations when balancing them against the costs of going forward with a trial whose probative accuracy the passage of time has begun by degrees to throw into question.

*Doggett v. United States*, 505 U.S. 647, 656 (1992).

When a defendant argues that his speedy trial rights have been violated, the Court

should employ a four-part balancing test set forth in *Barker v. Wingo,* 407 U.S. 514 (1972),

to assess the merits of the claim.  *United States v. Dent,* 149 F.3d 180, 184 (3d Cir. 1998).

An analysis of these factors avoids an "inflexible approach[]" which would result from

applying a fixed-time period in determining whether there has been a constitutional violation

and, rather, applies a balancing test "in which the conduct of both the prosecution and the

defendant are weighed."  *Barker*, 407 U.S. at 529-530.  In *Barker*, the Supreme Court

identified four factors in determining whether a defendant has been deprived of his right to a

speedy trial: "[l]ength of delay, the reasons for the delay, the defendant's assertion of his

right, and prejudice to the defendant."  *Id.* at 530.  "None of these factors is 'either a

necessary or sufficient condition,' and the factors 'must be considered together with such

other circumstances as may be relevant.'"  *United States v. Battis*, 589 F.3d 673, 678 (3d

Cir. 2009) (quoting *Barker*, 407 U.S. at 533); *see also, Hakeem v. Beyer*, 990 F.2d 750, 759

(3d Cir. 1993) ("All factors must be considered and weighed as no one factor is dispositive

nor 'talismanic.'") (citing *Barker*, 407 U.S. at 533).

## 1. Length of Delay

As an initial matter, the length of delay "is measured from the date of formal

accusation, *i.e.,* from the earliest date of arrest or indictment until the commencement of

trial." *Hakeem*, 990 F.2d at 760 (citing *United States v. MacDonald,* 456 U.S. 1, 6-7 (1982)).

Importantly, "[t]he length of the delay is to some extent a triggering mechanism. Until there

is some delay which is presumptively prejudicial, there is no necessity for inquiry into the

other factors that go into the balance." *Barker*, 407 U.S. at 530.  Otherwise stated,

> The first of these [factors] is actually a double enquiry. Simply to trigger a
> speedy trial analysis, an accused must allege that the interval between
> accusation and trial has crossed the threshold dividing ordinary from
> "presumptively prejudicial" delay, since, by definition, he cannot complain that
> the government has denied him a "speedy" trial if it has, in fact, prosecuted his
> case with customary promptness. If the accused makes this showing, the court
> must then consider, as one factor among several, the extent to which the delay
> stretches beyond the bare minimum needed to trigger judicial examination of
> the claim.

*Doggett,* 505 U.S. at 651-52 (internal citation omitted).  In determining whether a defendant

has met this threshold burden of demonstrating delay which is "presumptively prejudicial",

the Supreme Court has noted that "[d]epending on the nature of the charges, the lower

courts have generally found postaccusation delay 'presumptively prejudicial' at least as it

approaches one year" but has emphasized that "as the term is used in this threshold

context, 'presumptive prejudice' does not necessarily indicate a statistical probability of

prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Id*. at 652 n.1.  Further, "because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.  To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." *Barker*, 407 U.S. at 530-531.  *See also*, *Battis*, 589 F.3d at 678 ("We have previously held that a delay of even fourteen months is sufficient to trigger review of the remaining *Barker* factors.  However, we have also noted that longer delays can be tolerated, for example, when the crime is very serious or complex.") (internal citations and quotation marks omitted).

Here, Defendant was first indicted on January 23, 2018.  (3:18-CR-21 Doc. 1.)  Thus, over two and a half years have passed since the date of Defendant's Indictment.  He was arraigned on February 13, 2018, entered a plea of not guilty, and was ordered detained pending trial.  (Docs. 20, 21.)  This period of time is sufficient to trigger the *Barker* enquiry.  *See e.g., Hakeem*, 990 F.2d at 760 (over fourteen-month delay warranted full inquiry into *Barker* factors); *United States v. Mensah-Yawson*, 489 F. App'x 606, 611 (3d Cir. 2012) (fifteen-month delay sufficient to warrant inquiry into other *Barker* factors).

Although this length of delay is initially "presumptively prejudicial" and warrants an analysis of the *Barker* factors, this factor only slightly weighs in favor of Defendant because it is closely entwined with the reason for the delay.  Notably, Defendant asserts only that the

delay is sufficient to trigger review of the remaining *Barker* factors.  (Doc. 36 at 8; Doc. 38 at 8.)

## 2. Reason for the Delay

With respect to the second *Barker* factor, reason for the delay, the Government "bears the burden to justify the delay," *Hakeem,* 990 F.2d at 770.

> *Barker* grouped possible reasons for delay into three categories. A deliberate effort by the Government to delay the trial "in order to hamper the defense" weighs heavily against the Government. *Barker,* 407 U.S. at 531, 92 S.Ct. 2182. A "more neutral reason such as negligence or overcrowded courts" also weighs against the Government, though "less heavily." *Id.* This is because "ultimate responsibility for such circumstances must rest with the [G]overnment," since it is the Government's duty to bring a defendant to trial. *Id.* at 527, 531, 92 S.Ct. 2182. Finally, "a valid reason, such as a missing witness, should serve to justify appropriate delay." *Id.* at 531, 92 S.Ct. 2182.

*Battis*, 589 F.3d at 679-680.

In turn, "delays attributable to the dilatory actions of the defendant cut against a finding of a Sixth Amendment violation." *Hakeem*, 990 F.2d at 766.  *See also*, *Battis,* 589 F.3d at 680 ("By contrast, 'delay caused by the defense weighs against the defendant' . . .") (quoting *Vermont v. Brillon,* 556 U.S. 81, 90 (2009)).  This "rule accords with the reality that defendants may have incentives to employ delay as a 'defense tactic': delay may 'work to the accused's advantage' because 'witnesses may become unavailable or their memories may fade" over time.'"  *Brillon*, 556 U.S. at 90 (quoting *Barker*, 407 U.S. at 521); *see also*, *United States v. Loud Hawk*, 474 U.S. 302, 316-317 (1986) ("'Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision,

the defendants are not now able to criticize the very process which they so frequently called upon.'") (quoting *United States v. Auerbach,* 420 F.2d 921, 924 (5th Cir. 1969)).

The Government asserts that none of the 208-day non-excludable delay which occurred from Defendant's 2018 Indictment to the present was caused by the Government. (Doc. 37 at 23.)   At the Motion Hearing, the Government identified numerous motions filed by Defendant, including three requests for enlargements of time to file pretrial motions, later nunc pro tunc filing of pretrial motions by Defendant, and motions for continuances requested by Defendant.  (Hr'g Tr. 16:1-17:5.)  The Government stated that "[t]here was no deliberate attempt to delay trial or any improper motive in that case, no request for continuance, no request for enlargement of time for any of the dates."  (Hr'g Tr. 17:5-8.)

Defendant states generally that he "has been incarcerated continuously, and has endured multiple indictments, motions, and speedy trial challenges while he waits."  (Doc 36 at 8.)  Defendant also asserts that the Government "simply den[ies] causing any delay, even though the case has been previously dismissed without prejudice due to a violation of the Speedy Trial Act."  (Doc. 38 at 8.)

As discussed above, the dockets in both cases clearly show that Defendant filed numerous motions which delayed trial and the Government filed no motion which caused delay in either case.  *See supra* p. 20.  Insofar as the number of non-excludable days in excess of that allowed by the Speedy Trial Act may be considered to have been caused by the Government, i.e., sixty-eight days (sixty-three days in the first case and five days in the

second case), no evidence or argument suggests that the delay in either case was "[a]

deliberate effort by the Government to delay the trial in order to hamper the defense."

*Barker,* 407 U.S. at 531.  When considering the reason for the delay in 3:18-CR-21, the

Court concluded that

> there does not appear to be any bad faith or intentional dilatory conduct
> on the part of the Government. Green argues the Government's failure to
> request a trial date was "negligent." (Doc. 70 at 4). However, this one
> unexcused delay does not amount to negligence or neglect. *See United
> States v. Hernandez*, 863 F.2d 239, 244 (2d Cir.1988).

(3:18-CR-21 Doc. 71 at 5.)   Further, even if there was some small degree of negligence on

the part of the Government for non-excludable time over seventy days, when the total

number of days after the Indictment are considered (which Defendant asserts is the proper

Sixth Amendment consideration (Doc. 38 at 8)), the majority of the delay in bringing the first

case to trial is attributable to Defendant.  As argued by the Government in that case, "the

record demonstrates that the excludable days in this case were caused by Green." (3:18-

CR-21 Doc. 67 at 7.)   From his Indictment on January 23, 2018, to the time he filed his

motion to dismiss on Speedy Trial Act grounds on June 10, 2019, almost a year and a half

elapsed with 133 days being non-excludable.  Thus, over one year of excludable time was

attributable to motions filed by Defendant (with no indication in his filings or on the docket

that the Government did not provide timely discovery or respond promptly to pretrial

motions).  The Government did not delay in filing charges after the Indictment in 3:18-CR-21

was dismissed without prejudice on July 19, 2019.  (3:18-CR-21 Doc. 72), filing a Criminal

Complaint containing the 18 U.S.C. § 922 charges on the same day (3:19-MJ-57 Doc. 1.)

Similarly, in this case, a review of the docket shows that, at most, five days of the

delay in bringing this case to trial can be attributed to the Government.  The Government

acted promptly to remind the Court of the short time remaining on the Speedy Trial Act clock

(Doc. 26) and has done nothing since to delay the case.  Thus, in combination, based on an

apportionment of the responsibility for the delays since Defendant's Indictment in 3:18-CR-

21, the Court concludes that the second *Barker* factor, reason for the delay, weighs against

Defendant in light of the excludable time attributable to his numerous pretrial motions.  *See*

*Loud Hawk*, 474 U.S. at 316-317 ("'Having sought the aid of the judicial process and

realizing the deliberateness that a court employs in reaching a decision, the defendants are

not now able to criticize the very process which they so frequently called upon.'").

### 3.  Assertion of Speedy Trial Rights

The Court now turns to the third *Barker* factor – the defendant's assertion of his right

to a speedy trial.  "Whether and how a defendant asserts his right [to a speedy trial] is

closely related" to the other *Barker* factors.  *Barker*, 407 U.S. at 531.  Thus, the strength of a

defendant's efforts to assert his right "will be affected by the length of the delay, to some

extent by the reason for the delay, and most particularly by the personal prejudice, which is

not always readily identifiable, that he experiences."  *Barker*, 407 U.S. at 531.  "[T]he point

at which the defendant asserts his right is important because it may reflect the seriousness

of the personal prejudice he is experiencing." *United States v. Palmer*, 537 F.2d 1287, 1288

(5th Cir. 1976) (citing Barker, 407 U.S. at 531).

Here, Defendant asserted his right to a speedy trial in 3:18-CR-21 with a motion filed

on June 10, 2019.  (3:18-CR-21 Doc. 65.)  In his motion, he states that

> [t]he delay in this case between June 13, 2018, the date his pretrial motions
> [sic] and September 26, 2018, the date of the filing of the Motion for Leave to
> File a Motion to Suppress Evidence, was more than 70 days and was not
> excludable under the Speedy Trial Act. Thus, Green submits that his rights
> under the Speedy Trial Act were violated because the record reflects more than
> 70 days of non-excludable time, and that, therefore, the charges against him
> should be dismissed.

(3:18-CR-21 Doc. 65 ¶ 4.)  The Court agreed that the Speedy Trial Act clock had run before

Defendant filed his Motion for Leave to File Motion to Suppress Evidence Obtained as

Result of Illegal Arrest Nunc Pro Tunc (Doc. 35).  (3:18-CR-21 Doc. 71 at 4.)  Accordingly,

over eight months passed between the expiration of the Speedy Trial clock and the filing of

Defendant's motion.  With the trial set for June 3, 2019 (3:18-CR-21 Doc. 60), Defendant

filed a motion to continue the trial so that he could file a motion to dismiss on May 13, 2019,

which the Court granted on May 14, 2019, allowing Defendant until June 3, 2019, to file his

motion and supporting brief.  ((3:18-CR-21 Docs. 61, 62.)  On June 3, 2019, Defendant filed

a motion for extension of time to file his pretrial motion and brief which the Court granted on

June 5, 2019, allowing Defendant until June 10, 2019, to file his motion.  (Docs. 63, 64.)

Given this timeline, the Court concludes that Defendant delayed in asserting his

speedy trial rights in 3:18-CR-21.  As stated in *Palmer*, "[t]o the extent that promptness in

asserting the right is important, then [a defendant's] silence . . . works against him because it suggests that any hardships he suffered were either minimal or caused by other factors." 537 F.2d at 1288; *see also United States v. Vasquez-Uribe*, 426 F. App'x 131, 138 (3d Cir. 2011) (third *Barker* factor weighed against the defendant when first formal assertion of right to speedy trial did not come for more than one year after initial appearance). Relying on *Palmer*, *United States v. McNeil*, No. 3:08-CR-161-1, 2009 WL 3103782 (M.D. Pa. Sept. 24, 2009), noted that the defendant did not assert his speedy trial rights when they first began to expire and determined that "[t]he speedy trial issue was first raised over a year after the trial was originally scheduled to be held[.] . . . This failure to promptly assert his speedy trial rights indicates that 'any hardships he suffered were either minimal or caused by other factors.'" *Id.* at * 3 (quoting *Palmer*, 537 F.2d at 1288).

In 3:19-CR-233, Defendant's counsel indicated that he would be filing a Speedy Trial Act motion before the end of the year during the December 19, 2019, telephone conference. (Doc. 37 at 8.) He did not do so and, upon inquiry by the Government on January 3, 2020, Defendant's counsel indicated that Defendant no longer wanted a motion to dismiss filed. (*Id*.) Defendant's counsel confirmed this on January 6, 2020, and the Court was notified that neither party intended to file a pretrial motion. (Doc. 30 at 1.) Therefore, the Court scheduled the matter for trial on January 22, 2020. (*Id*. at 2 ¶ 1.) Thereafter, Defendant's counsel requested a telephone conference which was held on January 14, 2020, and Defendant filed the motion under consideration here (Doc. 34), on January 21, 2020. This

timeline shows that, after the expiration of the Speedy Trial clock on December 13, 2020,

Defendant failed to promptly assert his speedy trial rights and did so after informing the

Court that he was waiving those rights. Because Defendant did not promptly assert his right

to a speedy trial in either case, this factor does not weigh in his favor.

## 4. Prejudice to Defendant

Finally, the Court turns to the fourth *Barker* factor: prejudice to the defendant. With

respect to this factor, "the burden of showing prejudice lies with the individual claiming the

violation." *Hakeem*, 990 F.2d at 760.

As directed in *Barker*, the prejudice factor "should be assessed in the light of the

interests of defendants which the speedy trial right was designed to protect." 407 U.S. at

532. *Barker* identified and explained the three interests which the Supreme Court has

identified:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.
>
> We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather

> evidence, contact witnesses, or otherwise prepare his defense. Imposing those
> consequences on anyone who has not yet been convicted is serious. It is
> especially unfortunate to impose them on those persons who are ultimately
> found to be innocent. Finally, even if an accused is not incarcerated prior to
> trial, he is still disadvantaged by restraints on his liberty and by living under a
> cloud of anxiety, suspicion, and often hostility.

*Barker*, 407 U.S. at 532–33.

In response to the Government's argument regarding the prejudice factor that the

defendant had "failed to make any affirmative showing that the delay weakened his ability to

raise specific defenses, elicit specific testimony, or produce specific items of evidence,"

*Doggett*, 505 U.S. at 655, the Supreme Court emphasized that its precedent indicates that

> affirmative proof of particularized prejudice is not essential to every speedy trial
> claim. See *Moore [v. Arizona,* 414 U.S. 25, 26 (1973)]; *Barker, supra,* 407 U.S.,
> at 533, 92 S. Ct., at 2193. *Barker* explicitly recognized that impairment of one's
> defense is the most difficult form of speedy trial prejudice to prove because
> time's erosion of exculpatory evidence and testimony "can rarely
> be shown." 407 U.S., at 532, 92 S. Ct., at 2193. And though time can tilt the
> case against either side, see *id.,* at 521, 92 S. Ct., at 2187; *Loud Hawk,*
> *supra,* 474 U.S., at 315, 106 S. Ct., at 656, one cannot generally be sure which
> of them it has prejudiced more severely. Thus, we generally have to recognize
> that excessive delay presumptively compromises the reliability of a trial in ways
> that neither party can prove or, for that matter, identify. While such presumptive
> prejudice cannot alone carry a Sixth Amendment claim without regard to the
> other *Barker* criteria, see *Loud Hawk, supra,* at 315, 106 S. Ct., at 656, it is part
> of the mix of relevant facts, and its importance increases with the length of
> delay.

*Doggett*, 505 U.S. at 655–56.

In *Battis*, the Third Circuit drew from *Barker* and *Doggett* that a defendant can

establish prejudice in two ways.  589 F.3d at 682.  First, he can make a specific showing

that that he was subject to "'oppressive pretrial incarceration,' that he suffered 'anxiety and

concern' about the impending trial, or that his defense was impaired as a result of the delay." *Id.* (quoting *Barker*, 407 U.S. at 532).   Second, a defendant can claim prejudice without providing "'affirmative proof of particularized prejudice'" based on "'excessive delay [which] presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify.'"  *Id.* (quoting *Doggett* , 505 U.S. at 655-56).  In *United States v. Villalobos*, 560 F. App'x 122 (3d Cir. 2014) (not precedential), a panel of the Third Circuit identified the three types of prejudice recognized by the Supreme Court (as stated in *Hakeem*, 990 F.2d at 760), noting that the third type, impairment of a defense, "can either be shown in a particularized fashion, or presumed due to an extreme pre-trial delay."  560 F. App'x at 127 (citing *Doggett,* 505 U.S. at 655 (finding presumptive prejudice in pre-trial delay of more than eight years)).

Regarding prejudice resulting from oppressive pretrial incarceration, *Hakeem* found that pretrial incarceration of fourteen and one-half months was not *per se* oppressive, explaining that the determination of whether incarceration was "oppressive" takes into account the "conditions of confinement."  990 F.2d at 761 (citing *Barker*, 407 U.S. at 532; *Wells v. Petsock*, 941 F.2d 253, 257 (3d Cir. 1991)).  *Villalobos* noted that the Circuit Court has "held that where a defendant is detained for fourteen and a half months pre-trial, 'proof of sub-standard conditions or other oppressive factors beyond those that necessarily attend imprisonment' is necessary in order to establish prejudice due to oppressive pre-trial incarceration."  560 F. App'x at 127 (quoting *Hakeem,* 990 F.2d at 761).

Prejudice resulting from anxiety and concern cannot be based solely on a general claim of anxiety.  *Hakeem*, 990 F.2d at 762.  As stated by the Third Circuit,

> [v]ague allegations of anxiety are insufficient to state a cognizable claim. In *United States v. Dreyer,* 533 F.2d 112 (3d Cir.1976), we held that a defendant must show that his anxiety extended beyond that which "is inevitable in a criminal case." *Id.* at 116. In order to reach that level, the petitioner must produce evidence of psychic injury. *See id.* at 115-16.

990 F.2d at 762.

To establish that his defense was specifically prejudiced by the delay, a defendant cannot rely on general allegations.  *Hakeem*, 990 F.3d at 763.  Speculative and conclusory assertions cannot satisfy a defendant's burden of showing specific prejudice due to impairment of his defense: where there has been the recognition of "the possibility of impairment of a fair trial that may well result from the absence or loss of memory of witnesses in this case[,] . . . [t]hat possibility of prejudice is not sufficient to support [the defendants'] position that their speedy trial rights were violated."  *Loud Hawk*, 474 U.S. at 315 (internal citation and quotation omitted).

Alternatively, a defendant can rely on the presumption of prejudice discussed at length in *Doggett*.[5]  505 U.S. at 655-66.  To do so, he must show that the pretrial delay in his case was of sufficient duration to be considered presumptively prejudicial.  *See, e.g.,*

---

[5] Notably, the presumption of prejudice as to the fourth *Barker* factor differs from the initial presumption necessary to trigger consideration of the *Barker* factors.  For example, in *Hakeem*, fourteen and a half months was sufficient to trigger inquiry into the other *Barker* factors. 990 F/2d at 760, but not long enough to establish a presumption of prejudice under the prejudice factor, *id.*at 764.

*Battis*, 589 F.3d at 682-83.  *Battis* explained that "[i]n evaluating whether the period of delay was long enough to trigger this 'presumption of prejudice,' the *Doggett* Court considered both the total length of delay (over eight years) and the portion of that delay attributable to the Government (six years)."  589 F.3d at 682-82 (quoting *Doggett*, 505 U.S. at 657-58).  *Doggett* held that the delay was long enough to presume that the defendant's trial would be compromised and he would be prejudiced by the delay.  *Id.*  After stating that the Circuit Court had had few occasions to consider what period of time was sufficient to find presumptive prejudice, *Battis* noted that it had previously found a fourteen-month period between arrest and trial was insufficient to find presumptive prejudice.  *Id.* at 683 (citing *Hakeem*, 990 F.2d at 764).  The Circuit Court then held that "prejudice will be presumed when there is a forty-five-month delay in bringing a defendant to trial, even when it could be argued that only thirty-five months of that delay is attributable to the Government."  *Battis*, 589 F.3d at 683.  In *Villalobos*, the Third Circuit panel concluded that a delay of sixteen and a half months was insufficient to presume prejudice.  560 F. App'x at 127.  In *United States v. Shaw*, 891 F.3d 441, 455 (3d Cir. 2018), the Third Circuit assumed *arguendo* that twenty-seven months could be sufficient to find presumptive prejudice.

Importantly, where a defendant relies on a presumption of prejudice to establish the fourth *Barker* factor and identifies a delay of sufficient duration to be considered presumptively prejudicial, "the presumption of prejudice can be mitigated by a showing that the defendant acquiesced in the delay, or can be rebutted if the Government 'affirmatively

prove[s] that the delay left [the defendant's] ability to defend himself unimpaired.'" *Battis*,

589 F.3d at 682 (quoting *Doggett*, 505 U.S. 658 & n.1).

Turning now to Defendant's arguments regarding the prejudice factor, Defendant

recites the protected interests identified in *Barker* n his supporting brief and states that he

meets all identified elements.  (Doc. 36 at 8-9.)  He provides the following support for his

position:

> [t]he time Green has spent incarcerated without being brought to trial is clearly
> oppressive. Green has been incarcerated for over seven hundred (700) days.
> Moreover, the anxiety and concern are self-evident as he continues to seek his
> rights as a defendant are protected and enforced. Finally, his defense has been
> impaired due to the length of the delay. Over two years have elapsed since the
> original charges were filed at the state level. In a case with multiple witnesses,
> such delay can hamper recall of the events in question. While Green has been
> languishing in custody, his health has deteriorated, he's been unable to pursue
> gainful employment and had his ability to mount a viable defense hindered due
> to the passage of a significant amount of time.

(Doc. 36 at 9.)  In his reply brief, Defendant states that he

> has elucidated upon the prejudice he and his defense have suffered as a result
> of the continued, and repetitive delays. The government contends that Green
> has actually benefitted from the delay by pursuing a DNA expert witness. A
> defendant should not be punished for preparing a defense and exercising
> rights. Green's physical and mental health have suffered while he remains
> incarcerated. Personal and professional relationships, as well as his defense
> have suffered.

(Doc. 38 at 9.)

At the Motion Hearing, following the Government's assertion that Defendant

had not identified any specific witness issues or evidentiary issues that were caused

by either delay in his briefing on the motion (Hr'g Tr. 23:9-12), Defendant's counsel

stated the following:

> [t]here are, I think, two individuals who were -- maybe would consider testify as
> eyewitness to the alleged events -- which he denies. He plans to dispute that
> at trial. My investigator hasn't been able to find them. I don't know whether they
> are available.  He, of course, hasn't been able to contact any people because
> he's been in jail for 900 days.
>
>   I think that when you're in jail that long in trying to defend yourself in a
> case that's going to involve eyewitness testimony what some witness saw and
> what they said, you know, there should be some type of presumption of
> prejudice you can't defend yourself.

(Hr'g Tr. 25:8-19.)

Defendant's briefing of the prejudice issue does not establish specific prejudice in

that he merely concludes that the length of his incarceration was oppressive, he has had

ongoing anxiety and concern, and his defense has been impaired.  (Doc. 36 at 9.)

Regarding prejudice due to "oppressive" pretrial incarceration, Defendant does not

allege sub-standard conditions or other oppressive factors beyond those that necessarily

attend imprisonment as generally required to establish prejudice due to oppressive pretrial

incarceration.   *Hakeem,* 990 F.2d at 761; *Villalobos*, 560 F. App'x at 127.

Regarding prejudice due to anxiety, Defendant states that his "anxiety and concern

are self-evident as he continues to seek his rights as a defendant are protected and

enforced" and "his health has deteriorated." (Doc. 36 at 9.)  Defendant's vague allegations

are insufficient to state a cognizable claim. *Hakeem*, 990 F.2d at 762.  Defendant has not

pointed to anxiety which extended beyond that which "is inevitable in a criminal case" or any

evidence of psychic injury as required to show prejudice under this prong. *Dreyer*, 533 F.2d at 115-16.

Regarding specific prejudice to his defense, Defendant speaks in generalities regarding impaired defense, the "most serious" interest, *Barker*, 407 U.S. at 532. He relies only on general allegations concerning the length of the delay and the possibility that such delay can affect witnesses' memories, stating that "[i]In a case with multiple witnesses, such delay can hamper recall of the events in question." (*Id.*) This type of conclusory argument cannot satisfy Defendant's burden of showing that he was specifically prejudiced by the delay. *Hakeem*, 990 F.3d at 763; *Loud Hawk*, 474 U.S. at 315.

The foregoing analysis shows that, in his briefing of the pending motion, Defendant has not established specific prejudice under the fourth *Barker* factor. While Defendant's counsel's Motion Hearing argument is more specific as to certain witnesses (Hr'g Tr. 25:8-14), the vague assertions regarding their identity and availability shows, at most, the possibility of prejudice, which is insufficient when a defendant seeks to establish specific prejudice under the fourth *Barker* factor. *Loud Hawk*, 474 U.S. at 315. Thus, to the extent Defendant attempts to establish prejudice by showing that his defense was impaired by the delay, his reference to two potential witnesses whom his investigator had been unable to contact lacks the required specificity. With no indication of the potential exculpatory value of the witnesses referenced, Defendant shows no prejudice to his defense merely because the

individuals had not been contacted by his investigator and Defendant himself was unable to

do so because he was incarcerated.[6]

Because Defendant has not established "specific prejudice by showing that he was

subject to 'oppressive pretrial incarceration,' that he suffered 'anxiety and concern' about

---

[6] Although only tangentially germane to the disposition of the pending matter, the Court does not find it readily apparent how an "eyewitness to the alleged events," taken to reference events of October 5, 2018, which led to the current charges, could provide exculpatory evidence on the specific charges when the elements of those offenses are considered. Defendant is charged in the Indictment with Prohibited Person in Possession of a Firearm, 18 U.S.C. § 922(g), and Possession of a Firearm with an Obliterated Serial Number, 18 U.S.C. § 922(k). (Doc. 12.) Count 1 of the Indictment specifically charges that Defendant, "knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm, to wit, a silver/black Kahr Arms .40 caliber handgun with an obliterated serial number, and the firearm was in and affecting commerce" (Doc. 12 at 1) in violation of 18 U.S.C. § 922(g)(1) which provides as follows:

(g) It shall be unlawful for any person—

(1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

. . . .

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C.A. § 922(g)(1). In Count 2 of the Indictment, Defendant is charged with possession of a firearm that had been shipped and transported in interstate commerce from which the manufacturer's serial number had been removed, altered or obliterated in violation of 18 U.S.C. § 922(k) (Doc. 12 at 2) which provides as follows:

(k) It shall be unlawful for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered or to possess or receive any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered and has, at any time, been shipped or transported in interstate or foreign commerce.

18 U.S.C.A. § 922(k).

the impending trial, or that his defense was impaired as a result of the delay," *Battis*, 589

F.3d at 682 (quoting *Barker*, 407 U.S. at 532),  his only avenue of showing prejudice under

the fourth *Barker* factor is to establish presumptive prejudice.  *See Doggett*, 505 U.S. at

655-66.  Thus, the Court will now turn to consideration of Defendant's counsel's statement

at the Motion Hearing regarding "presumption of prejudice": "when you're in jail [for 900

days] in trying to defend yourself in a case that's going to involve eyewitness testimony what

some witness saw and what they said, you know, there should be some type of presumption

of prejudice you can't defend yourself."  (Hr'g Tr. 25:15-19.)

Considering this statement to be an assertion of the presumptive prejudice explained

in *Doggett*, Defendant does not attempt to conduct the inquiry necessary to rely on the

presumption of prejudice discussed at length by the Supreme Court.  505 U.S. at 655-66.

As set out above, to establish presumptive prejudice he must show that the pretrial delay in

his case was of sufficient duration to be considered presumptively prejudicial.  *See, e.g.,*

*Battis*, 589 F.3d at 682-83.  Defendant does not attempt to separate the length of the total

delay and the portion of the delay attributable to the Government, *see Doggett,* 505 U.S. at

657-58; *Battis,* 589 F.3d at 682-82, or otherwise conduct an analysis of presumptive

prejudice.

While the overall delay here is less than those held to be presumptively prejudicial in

*Doggett* (eight years), 505 U.S. at 655-56, and *Battis* (forty-five months)*,* 589 F.3d at 683, it

is longer than those found insufficient in *Hakeem* (fourteen and a half months), 990 F.2d at

43

764, and *Villalobos* (seventeen and a half months), 560 F. App'x at 127.  The delay here is

more than the twenty-seven months assumed *arguendo* to be sufficient to find presumptive

prejudice in *Shaw*, 891 F.3d at 455.  As the time at issue here exceeds that assumed

*arguendo* to be sufficient in *Shaw*, the Court will proceed with the relevant analysis

assuming *arguendo* that the delay in this case is presumptively prejudicial.  Thus, the next

question is whether the presumption is mitigated by a showing that Defendant acquiesced in

the delay or by the Government's affirmative proof that Defendant's ability to defend himself

is unimpaired.  *Battis,* 589 F.3d at 682.

The analysis set out in considering the reason for the delay and Defendant's

assertion of his speedy trial rights shows that Defendant acquiesced in the delay.  The vast

majority of the delay is attributable to Defendant.  *See supra* pp. 30-31.  Defendant filed

numerous pretrial motions. *See supra* pp. 20, 21, 29.  He did not file a motion to dismiss in

the first case for over eight months after the Speedy Trial Act clock had run.  *See supra* p.

32.  In the second case, Defendant indicated an intention to file a Speedy Trial Act motion

within a certain time period and did not do so, then reversed course and indicated an

intention to waive his speedy trial rights, and ultimately changed his mind again and filed the

motion under consideration here. *See supra* pp. 33-34.  While, as Defendant's counsel

stated at the Motion Hearing, Defendant has "a right to defend himself and assert his rights"

(Hr'g Tr. 25:1), the manner in which he has done so in both cases considered here has

caused numerous delays which demonstrate acquiescence in the delay in bringing this case and its predecessor to trial.

On this record, the Court concludes that, assuming *arguendo* that the delay here gives rise to presumptive prejudice under *Doggett*, the presumption is mitigated by Defendant's acquiescence in the delay.  Therefore, this factor does not weigh in Defendant's favor.[7]

## 5. Balancing of Factors

As the foregoing analysis establishes, on balance, only the first *Barker* factor (length of delay) weighs slightly in Defendant's.  Defendant's role in creating the delay, the fact that he did not promptly assert his speedy trial rights in either case, and his failure to establish specific or presumptive prejudice foreclose a determination that he has demonstrated that his Sixth Amendment speedy trial rights were violated.  Thus, Defendant's pending motion will be denied as to the Sixth Amendment speedy trial claim.

## IV. CONCLUSION

For the reasons set out above, the Court will grant the Motion of Defendant, Lance Green, to Dismiss for Violation of the Speedy Trial Act and the United States Constitution (Doc. 34) in part and deny it in part.  The Court will grant the motion insofar as the Court

---

[7] With this determination, the Court need not proceed with an analysis of whether the Government provided affirmative proof that Defendant's ability to defend himself is unimpaired.  *Battis,* 589 F.3d at 682.

concludes that the Speedy Trial Act was violated and the July 30, 2019, Indictment must be

dismissed.  The Motion will be denied in that the dismissal will be without prejudice and

Defendant's Sixth Amendment claim will be denied.  A separate Order is filed

simultaneously with this Memorandum Opinion.

Robert D. Mariani
United States District Judge